Good morning. May it please the Court. I'm Tom Kline. I'm here on behalf of Rolls-Royce Corporation. I'd like to save a couple of minutes for rebuttal. What I want to do is just talk about two points that are issues raised in the briefs but not repeating what's in the briefs because I know the Court's familiar with the arguments already made and in the record. The first is with respect to the Section 145 factors and really how the principal place of injury is in Texas and that shows why Judge McDonald got it wrong about where the principal place of business is. It's also in Texas. And then second, brief comment on the policy issues that are raised in Section 6 of the restatement. So on the first point, the economic loss... Let me stop you and ask you one question. It seems to me that Hertz Corporation v. Friend is the appropriate case. Would you agree with that? Absolutely. For all the reasons we said, primarily in the reply brief, we cited a number of cases who have said even though Friend's a jurisdiction case, it also applies on choice of law issues. The magistrate judge agreed with that. He did. He did. It was the appellees who kind of suggested there might not be an application of Hertz v. Friend. But the magistrate judge said it and he used the right language, nerve center. We think if you read the opinion, he really is looking at the operations. And if you look at where the injury happened, so look at that Section 145 factor, place of injury, the appellees agree that the economic loss occurs where MedTrans sustained the economic impact of the loss. And the record reveals that all of the financial stuff takes place in Texas. The witness, the corporate representative witness that they produced kept saying, corporate takes care of that, the financial stuff, the acquisitions, the decisions about whether to buy a helicopter to go into a new location. All of that is done in Texas. So the economic impact of the loss of this helicopter when it went down in South Dakota was felt in Texas where the finances are. What they do in Arizona is they keep track of the paperwork. They make sure all their pilots are licensed. They make sure that all the aircraft they're running are properly certified. How does this come up? I've sort of never figured it out from the briefs. Do they have a lot of planes in Phoenix? Is that what — is that how Arizona gets contacted? It's clear to me your argument that the corporation functions out of Texas. But they're arguing, and the magistrate judge seemed to agree, that there's something going on in Phoenix, which I never understood. Why is there even people in Phoenix unless all of your helicopters are there? Well, the reason there's somebody in Phoenix is Burt Levesque, who's actually down in Tucson, knew the guy at the FAA office in Scottsdale. And so they chose Tucson because of that relationship. There's only three aircraft actually operated in Arizona by MedTrans out of a fleet of 69 aircraft that are operated in 50 different locations around the country. So there's nothing to do with the function itself that required something to be done in Phoenix area. It's just happenstance. Is that your argument? It's essentially happenstance, taking advantage of the relationship Levesque had with this FAA person in the Scottsdale office. And the FAA would have let them put that office in other places too? Yeah. If you look at the regulations, they could have chosen any place to put the FAA office. Then the FAA would say, okay, you're going to deal with this field office. So all of that CFR stuff that's in the record explains how that process works. Let me stop you just a little bit because it seems to me you got a little bit ahead of this because it seems to me that your opponents suggest that Hertz isn't technically binding, that instead this is governed by Arizona choice of law. Well, it is governed by Arizona choice of law for sure. And the Claxon case and the Garcia VGM case is the two key Arizona cases on that. All right. So Friend is how we determine where the principal place of business is, which is one of the factors under Restatement Section 145. So even though they consider, they say Arizona law is binding here and it doesn't have anything to do with federal law, you're using Hertz to find where the principal place of business is under Arizona law? Exactly. The Supreme Court said, look, there's lots of tests that have been used to determine principal place of business. Let's use nerve center. Arizona choice of law. That's the only one. Well, under Arizona choice of law, you look at the restatement second factors. One of the factors under Section 145 is place of business. Yeah. Comment E makes it clear that you look at the principal place of business, which makes sense. They follow the restatement. Sure. And do you have an Arizona case that says that the nerve center test is what they mean by principal place of business in Arizona? We don't have an Arizona case. We cited a number of other cases in the reply brief, a number of federal court cases from around the country that have done that. But, you know, it just makes sense. That is a U.S. Supreme Court case that defines how you determine where the principal place of business is. But, again, if you look at the economic impact of the loss, that is the place of injury, it's felt in Texas. All they felt in Arizona is now they had one less helicopter to keep track of in terms of the paperwork. In Texas... And that would have been true wherever the helicopter went down. Absolutely. Absolutely. The proof of loss, which is at Record 125, ER 125, is prepared in Texas, was filed in Texas, was given by the chief financial officer who's in Texas to the insurance company, Star, who's based in Texas. So that's more evidence that the loss was, the impact was felt in Texas. And then that also informs why the principal place of business that is relevant in this case is in Texas. So now you have two factors overwhelmingly showing Texas is the place. So then we look quickly at the policy factors under Section 6. And I think the one that swamps this is the fifth one that looks at the policy underlying this field of law. You here have a Texas corporation that experienced a loss that they felt in Texas. We're compensated by a Texas insurance company, which then brings a subrogation action in Arizona. Why? Because the economic loss doctrine in Arizona might let them recover tort damages. So this isn't about getting, quote, full compensation. This is about the insurance company in Texas possibly getting a windfall if Arizona law is applied. So this is smacks of crossing the line into choosing a forum that will give them a better recovery. And that is the policy underlying this field of law. We should not allow choosing a forum just because it gives them better recovery. And what do I owe deference? I mean, the magistrate judge determined that most of the visible day-to-day operations of mid-trans occurs in Tucson. Do I owe any deference to that factual determination? Well, he found that we don't disagree with the facts. What the facts are is Tucson keeps the pilot's certificates, makes sure that their licenses are valid, and that the aircraft are certified. But the operations are run in the 50 other areas where the helicopter took off. This one took off in Aberdeen, South Dakota. The pilot in command of that helicopter had the ultimate authority for that particular flight. But the application of this nerve test to the facts, do we review that for clear error? You review it de novo. And how do we know that? That's the case that's cited in our opening brief. But it seemed like just a generic case, not one that really is about the application of the nerve center test. So do you have any more specific case that tells us that's the standard of review? I don't have one that's directly on point, but this is a question of application of the law as expressed in Hertz and also the fact that the economic loss is felt in Texas to the facts. And based on the loss being felt in Texas and the principal place of business therefore being in Texas, Texas law should be the one that applies. And I'd like to reserve the rest of my time for rebuttal. Thank you. Good morning. May it please the Court. Peter Molinar on behalf of Star Indemnity and Liability Company. I'm also joined with Counselor Ross Cunningham. First, I want to address the question about the deference that's afforded. Actually, the level of deference that's afforded to factual determinations is clear error. And that case is cited in our brief. Do you have a case that tells us that this is a fact question? I do not have a case that says that the factual determinations for a nerve center test is a fact question. Well, I don't think there's any dispute about the underlying facts. The issue is when you apply the nerve center test to this set of undisputed facts and come up with an answer, is that application of law to fact more factual or more legal? I do not have a case that says that. I also do not have a case in Arizona that applies Hertz to the Restatement 145. But you don't have one that doesn't. I do not have one that doesn't. But what I do have is the plain language of Section 145 of the Restatement, which says place of business of the parties. Well, then what you're really asking us to do is examine the Restatement and make an interpretation thereof, right? Well, what I'm asking the Court to do is, one, focusing on the factual determinations that the district court made that are reviewed for clear error, which did determine the places of injury as well as the nerve center. Frankly, I'm like my colleague. I don't know there were any real factual determinations to be made. All they had to do was determine what the facts were, and they don't seem to be even questioned. How do you get around Abogados v. AT&T? Abogados v. AT&T says, it's a Ninth Circuit case, which I'm bound by, a district court's decision concerning the appropriate choice of law is reviewed de novo. Well, that is accurate as it relates to the legal. As to the appropriate choice of law, right? And that is correct, yes, Your Honor. Okay. So then it seems to me, then, if we're talking about choice of law, which we are here, that we're on a de novo review. I agree as far as the facts as they are applied to the law, that it would be de novo as it relates to the factual determinations, like place of injury, what's the importance of the principal base of operation in Tucson, Arizona, to MedTrans. Those factual determinations should be subject to clear error. Well, to the extent that there was a factual determination, I guess, but I'm, again, having a tough time understanding why there wasn't even any conflict. He's just weighing facts that were there in the record. Well, Your Honor, I believe there's even the factual arguments we even exposed this morning. The principal base of operation is actually, it is not a mere administrative place. In fact, the record demonstrates that, yes, it is there for FAA administration, but it also is the place where MedTrans has its operational control for every single flight that exists throughout the United States. Simply put, without the principal base of operation, MedTrans could not launch a single flight. And that's because you have one employee who's in charge of that in Arizona, but all the officers of the company are in Texas? The corporate officers of MedTrans are in Texas, but there's two critical things. One, you have to have a principal base of operation, and the record disagrees with the statement that Mr. Klein made, that it was only chosen because of Mr. Levesque's relationship. First of all, Mr. Loeb here testified. Well, whether or not it was because of the relationship, do you deny that it could have been placed basically anywhere? The FAA doesn't have rules about where you place it? Well, the FAA is the one who determines where it is, so I don't think that we can say MedTrans could just put it anywhere. Well, do you have something to support that? My understanding was you designate it and tell the FAA where it is. Where does the FAA tell the company where to put their head of – where their base of operations? Yes, there is a FAA Advisory Circular 12049, which is cited in the brief, and this is where the FAA considers the following factors when choosing the appropriate district office. The geographic area of the applicant's operation or geographic center of its route structure to the location of the applicant's key management personnel and other persons who have authority to make decisions on FAA-related matters, and three, the qualifications of the district office inspectors with respect to the proposed type of operation and aircraft. It is the FAA who chooses where the principal base of operation is located. MedTrans will apply and say we'd like to put it here, which it did, and even at that time the corporate headquarters was in North Dakota. It wasn't even in Texas. Do you disagree with the NERF center test? I disagree that it is binding. It may be – Well, you're just saying Hertz is not binding in Arizona. Is that what you're saying? I'm saying that as a matter of law, Hertz is not binding on the restatement – restatement 2nd, Section 145 of Confidence. Have you offered an alternative test? I have not because the plain language of the restatement actually guides us, and that says that the court is to make a determination of which state, with respect to that issue, has the most significant relationship to the occurrence and to the parties. Then it also says that you add up all these contacts and you determine their relative importance with respect to the particular issue. So this is, unlike the kind of bright-line rule that Hertz was looking for, for jurisdictional purposes, this is more of a balancing test where the court is supposed to place the importance of these specific contacts. And that is what the magistrate judge did. But if I read the restatement, the Restatement 145 comment on subsection 2e, it says, at least with respect to most issues, a corporation's principal place of business is more important – is a more important contact than the place of incorporation. And this is particularly true in situations where the corporation does little or no business in the latter place. These contacts are of importance in situations where injury occurs in two or more states. So the place of the plaintiff's domicile, or on occasion his principal place of business, is the most important contact for determining the state of the applicable law as to most issues and situations involving multistate publication. So here we have, they're talking about principal place of business. Then I go back to Hertz. And Hertz says, the Nerve Center test, even if a bulk of the company's business activities are visible to the public, take place in New Jersey, while its top officers direct those activities just across the river in New York, the principal place of business is New York. It seems to me they're talking about the same principal place of business, and therefore Arizona's choice of law rules would incorporate Hertz to a T. And I would definitely agree that in most circumstances that would be correct. However, I think that the restatement does allow flexibility, whereas Hertz really does not, although it does recognize that there could be other situations. Well, if it's flexibility we're talking about, and I have de novo review, then I can be just as flexible as I want to be here, just as the district court was flexible. That's why I had you focus on what my standard of review was. I'm trying to make clear that Arizona's choice of law rules, which is your argument, they're not violated by Hertz, because it seems to me I'm bound by Hertz. And it seems to me that Hertz makes it what it is. And therefore, I'm trying to say to you, it seems to me on a de novo review, you're going to have Hertz and you're going to lose. And I would say respectfully, first of all, you're not bound by Hertz, because this is not a case interpreting the diversity jurisdiction. Second of all, unlike most industries, the financial control is not the same as operational control in the aviation industry. The principal base of operation in Tucson, Arizona, is the place where MedTrans directs and controls all flight operations, which is the core business. If you look at what Hertz is talking about, it's primarily talking about these high-level executive decisions and financial control. But in the aviation industry, that is not where the corporation directs and controls its operations. Mr. Levesque is the only person at MedTrans who can authorize a flight to take off. The CEO cannot do that. The vice president cannot do that. Is there anything in Arizona law that says Arizona follows the FAA definition when it's an aerospace case? There is not, because, again, Arizona follows the restatement, which is a flexible standard. But we don't have anything in the restatement that says when it's an aerospace case, we look at the FAA. When it's a shipping case, we look at something else. I mean, you're adding that, right? I am applying the factual determinations made by the district court to this case in the context of the restatement. And, yes, just as there isn't a case that applies the FAA definition of principle-based operation, there is also not an Arizona case applying Hertz to Section 145. Do you argue in the district court that Hertz didn't apply? We did not because it came up in the motion for reconsideration was the first time that Rolls-Royce argued that it was binding. Well, but everyone was talking about the Hertz test even before that, right? It was part of the analysis, yes, but no one said that it was binding and it was error. Well, what difference does it make? If everyone is applying that test, whether it's binding or just optional, shouldn't you have said, wait a second, I think the test is something else? It's something that could have been brought up, but, again, under even the analysis of Hertz, and you look at the nerve center, and that's why I was focusing on some of the language of Hertz, what says you look to the place where the corporate officers direct and control the business of the company. Here, that is the principle-based operation in Tucson, Arizona, because that is where all flights are directed and operated, and that is where the one and only person in the entire company resides that gets to authorize whether or not a flight takes off. And that is an operational and administrative function. We've heard your argument. Do you have any further questions? Do you have any questions? No. All right, thank you. I think you're reserved. Could I start out on what bothers me about the case? Sure. I normally follow the Supreme Court, and I like Justice Breyer. He's a good friend, so I'm going to have a tendency to follow Hertz for reasons other than being a judge, but the language that bothers me in the practice would normally be the place where the corporate maintains headquarters. Then there's a provided, and the provided is always the problem. Provided that the headquarters is the actual center of direction and control and coordination. Now, your opposition is moving right into that, as I understand their argument. They're going to the provided clause, and they're saying the actual center of direction and control and coordination is in Tucson because that's where they give direction for all of the flights and all of the rest. So tell me why you're right and that they're wrong. So if the aircraft isn't certified or if the pilot's not licensed, can't take off. That's what they make sure of in Tucson. But it's in Texas where they decide to buy the aircraft. And if they don't decide to buy any aircraft in Texas, Tucson has nothing to keep track of. Who decides whether the plane is going to take off and whether it's going to be flying at a certain time and those issues? Tucson makes sure the pilot is licensed and the aircraft is certified. The pilot is the one who ultimately decides where the aircraft is going to take off because he's there and looking at the weather and other conditions that may or may not affect that flight. That's the pilot in command. That's the first page in the supplemental excerpt of the record that's attached to the reply. So ultimately it's the pilot who has the authority, the pilot in command. But it is Texas that's deciding whether to buy the equipment. They're making all of the financial decisions at corporate. Therefore, Texas is the nerve center. Who makes the decision where the planes are going to fly, sets up schedules? Well, this is a medical transport company. So, for example, the Aberdeen, they get a call that they have an auto wreck out on the highway. They need a helicopter. So the helicopter is dispatched by the hospital. They go pick up the person and bring them to the hospital in South Dakota. No, there's not something like when I go down to get the airplane in San Francisco to go to San Diego, there's already a schedule. Your business operates on an ad hoc basis. MedTrans business operates on an ad hoc basis, correct. There's no predetermined flight schedules. And where is that decision made, yes, we're going to go fly and take care of that accident that happened on 8? Well, the decision is made in Texas to open an operation in Aberdeen, South Dakota, and buy a helicopter to staff that operation. Then in Tucson, they make sure that that aircraft is certified by the FAA and the pilot has a license. But the ultimate decision, the key decision is made in Texas to have a location in South Dakota. And who runs the location? Well, the pilot and the crew who are in Aberdeen are going to field the call from the hospital to go get the people at the wreck. But that's on an individual basis with respect to that call. I understand your answer. Thank you. All right, thank you. Thank you. Case is now submitted. Star Indemnity v. Rolls-Royce, 1617291 is submitted. And we'll now move to Case 17-10161, United States of America v. Nature.
judges: Wallace, N.R. Smith, Friedland